UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| WAGNER AERONAUTICAL, INC., et al., | Case No.: 21-cv-0994-L-AGS |
|---|---|
| Plaintiffs, | **ORDER GRANTING DEFENDANTS' EX PARTE APPLICATION FOR RELEASE OF BUSINESS PLANS UNDER IN CAMERA REVIEW (ECF 172) AND MOTION TO SEAL (ECF 173)** |
| v. | |
| David DOTZENROTH, et al., | |
| Defendants. | |

Plaintiffs moved for a temporary injunction against the Dotzenroth defendants. (*See* ECF 161.) To defend that motion, defendants seek "the release of copies of plaintiffs' business plans submitted to the Court for in camera review." (ECF 172, at 3.) Because the Court finds those documents relevant and proportional to the needs of the case, the Court **GRANTS** the motion.

## BACKGROUND

According to plaintiffs, back in 2017 or 2018, plaintiffs William Wagner and William Tarpley began collaborating with defendant David Dotzenroth to design a passenger-to-freighter jumbo-jet conversion program. (ECF 132, at 11.) During this collaboration, they created a PowerPoint "business plan" and a multi-tab spreadsheet "budget and schedule roadmap." (*Id.* at 12-13.) In summer 2019, however, Dotzenroth parted ways from plaintiffs. (*Id.* at 17.) The next year Wagner and Tarpley went on to form Mammoth Freighters, LLC, their jumbo-jet conversion program. (*Id.* at 30.) Dotzenroth likewise continued to pursue a conversion project, launching a competing program in fall 2021. (*Id.* at 27.)

Plaintiffs then sued defendants for allegedly misappropriating trade secrets, namely their "business plan, budget and schedule roadmap, and supporting data." (*Id.* at 34.) Plaintiffs allege "this information has independent economic value because it proves the viability of Plaintiffs' Jumbo Jet conversion program, provides the specific business plan

for the program, gives Plaintiffs' program a competitive edge in the [passenger-to-freighter] conversion market, required substantial effort and investment to produce, and confers on Plaintiffs an advantage over their competitors." (*Id.*)

The Dotzenroth defendants served discovery requests seeking, among other things, all versions of the business plan and roadmap. (*See* ECF 122-2, at 168-69, 188.) Plaintiffs refused to hand over any versions created after the parties ceased collaborating. (*Id.* at 169, 188.) Defendants moved to compel production. (ECF 122.) This Court ordered plaintiffs to submit the "post-August 2019 versions of the roadmap and the business plan" to the Court for review, "flag[ging] the roadmap and business plan, or the roadmaps and business plans that were used to court [investment firm] Fortress in this case." (ECF 158, at 25.)

While producing those documents for review, though, plaintiffs moved for a preliminary injunction against the Dotzenroth defendants. (ECF 161.) Defendants subsequently filed the present motion, renewing their request to compel the post-August 2019 versions to support their opposition to the injunction.[1] (ECF 172, at 3.)

---

[1] Plaintiffs contend that defendants' motion should be denied for failing to meet and confer with plaintiffs about it. (ECF 175, at 2 n.1.) The parties met and conferred before bringing the underlying Rule 37 motion to compel. (*See* ECF 122-2, at 3; ECF 138-1, at 4.) The present motion—a motion to expedite the Court's review—is not brought under a Rule subject to the meet-and-confer requirement. *See* CivLR 26.1(a) ("The Court will entertain no motion pursuant to Rules 26 through 37, Fed. R. Civ. P., unless counsel will have previously met and conferred concerning all disputed issues."). Even if this motion had not been filed, this Court would still need to render a ruling on the discovery of the *in camera* files, and that ruling would not require any additional meet-and-confer efforts.

# DISCUSSION

## A.    Legal Standard[2]

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "The party seeking to avoid discovery bears the burden of showing why that discovery should not be permitted." *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 309 (D. Nev. 2019) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)), *aff'd*, No. 2:17-CV-2349-KJD-NJK, 2020 WL 1042515 (D. Nev. Mar. 3, 2020).

Relevance for discovery purposes is defined "very broadly." *Garneau v. City of Seattle*, 147 F.3d 802, 812 (9th Cir. 1998) (citation omitted); *see also Greer v. Cty. of San Diego*, No. 19-CV-378-GPC-DEB, 2021 WL 5989933, at *1 (S.D. Cal. Dec. 17, 2021) ("Even after the 2015 amendments to Rule 26, discovery relevance remains a broad concept." (quotation omitted)). And district courts have "broad discretion in determining relevancy for discovery purposes." *See Mfg. Automation & Software Sys., Inc. v. Hughes*, No. CV 16-8962-CAS (KSX), 2017 WL 5641120, at *3 (C.D. Cal. Sept. 21, 2017) (citing *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 635 (9th Cir. 2005)).

But even relevant material may not be discoverable if it is not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In determining the needs of the case, the court "consider[s] the importance of the issues at stake in the action, the amount in controversy,

---

[2] Plaintiffs argue that the proper standard for discovery of trade secrets requires that "such disclosure is relevant *and necessary* to the proper presentation of a plaintiff's or defendant's case." (ECF 138, at 14 (quoting *Hartley Pen Co. v. U.S. Dist. Ct.*, 287 F.2d 324, 328 (9th Cir. 1961)) (emphasis added).) Yet plaintiffs rely on *Hartley Pen Co.*, a case decided before two crucial amendments to the Federal Rules of Civil Procedure. The 1970 Amendments added an explicit reference to trade secrets—*see* Fed. R. Civ. P. 26(c)(1)(G)—and the 2015 Amendments clarified the relevance standard, *see* Fed. R. Civ. P. 26(b)(1). Given these intervening revisions and the absence of any subsequent Ninth Circuit precedent, this Court will adhere to the current discovery standards established by the Federal Rules.

3

the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

**B.     Relevance of Post-2019 Trade Secrets**

To determine the relevance of the post-2019 business plans and roadmaps, the Court undertook an *in camera* review. (ECF 158, at 25.) Comparing the *in camera* documents to older versions, there are significant revisions. For instance, new graphics, additional models, and updated facts and figures have been added to the business plan. And the roadmap figures have been changed, the schedules amended, data added, and new sheets incorporated in the Excel workbook.[3]

Accordingly, the post-2019 versions satisfy the low threshold for relevancy. Defendants are entitled to argue, or at least get the information to argue, that the true economic value of the business plan is in the post-August 2019 changes. And those changes, by inference, "undermine plaintiffs' contentions that [the] older versions actually had value." (ECF 172, at 4.) Plaintiffs are certainly free to argue that pre-August 2019 versions still "have independent economic value even if there is no actual product on the market utilizing the information." *Leatt Corp. v. Innovative Safety Tech., LLC*, No. 09-cv-1301, 2010 WL 1526382, at *6 (S.D. Cal. Apr. 15, 2010). But the post-August 2019 versions still bear on a key issue: whether the earlier versions in fact have value and how much. The fact that there are *other* ways to attack valuation or independent economic value does not mean that this information is irrelevant. *See Big City Dynasty v. FP Holdings, L.P.*, 336 F.R.D. 507, 511 (D. Nev. 2020) ("[A] party is entitled to seek discovery on its theory of the facts and the law[] and is not limited in discovery by the opponent's theory." (citation omitted)).

---

[3] The Court expresses no opinion on whether these changes ultimately affected the economic value of the older versions, as that issue is not before the Court.

The post-August 2019 versions are also relevant to plaintiffs' claim of ongoing harm. Plaintiffs claim "a loss of customers, goodwill, or competitive advantage" due to defendants "launch[ing] a competing conversion program and . . . vying for the very same customers as Plaintiffs." (ECF 175, at 3.) But defendants "need to actually see what really made the program go"—i.e., the post-August 2019 versions of the business plan and roadmap—to test that claim. (ECF 158, at 13.) If plaintiffs aren't still using the same general information from the older versions, it may be less likely plaintiffs' ongoing harm is due to defendants' use of that information. For example, defendants' experts may conclude that the post-August 2019 changes resulted in poorer engineering or shoddy cost management of the conversion program. So then plaintiffs' alleged ongoing harm could be attributed to plaintiffs' own behavior, rather than to defendants' use of older versions. But if defendants don't even know what's in the current business plan and roadmap, they can't effectively contest causation.

For both these reasons, then, the post-2019 documents are relevant.

**C.  Proportionality**

Plaintiffs say the business plan and roadmap are "the most critical and valuable parts" of their conversion program. (ECF 132, at 32.) Handing over the post-August 2019 versions of these documents thus runs the risk of giving defendants—a direct competitor— an inside look at plaintiffs' updated proprietary information. (*See* ECF 138, at 16.)

But the parties agreed to a stipulated protective order. (ECF 75.) Under the terms of that order, counsel is prohibited from sharing any discovery labeled "COUNSEL ONLY" with their clients. (*See* ECF 75, at 4 ("Information designated 'CONFIDENTIAL - FOR COUNSEL ONLY' must be viewed only by counsel (as defined in paragraph 3) of the receiving party, and by independent experts . . . .").) Were defense counsel to share such discovery with the defendants, they would be in violation of a direct court order and subject to sanctions. *See* Fed R. Civ. P. 37(b)(2) (authorizing district courts to impose "further just orders" for failing to obey discovery orders).

Plaintiffs nevertheless consider the protective order "cold comfort," noting that defense counsel filed versions of the business plan and roadmap on the public docket. (ECF 138, at 16; *see also* ECF 20-3.) Since agreeing to the stipulated protective order, however, defense counsel has consistently redacted and moved to seal filings containing plaintiffs' proprietary information. (*See, e.g.*, ECF 76; ECF 77; ECF 122; ECF 123; ECF 172; ECF 173.) The Court is thus confident that defense counsel will honor the counsel-only designation and that the post-August 2019 versions of the business plan and roadmap will not be shared with their clients. Defense counsel should be keenly aware that they would be subject to severe sanctions for any improper disclosures.

## CONCLUSION

Because the post-August 2019 versions of the business plan and roadmap are relevant and proportional to the needs of the case, the Court **GRANTS** defendants' motion.

1. By January 24, 2022, plaintiffs must tender to defense counsel copies of all documents that plaintiffs submitted to this Court for *in camera* review. Each document must be designated "COUNSEL ONLY" under the terms of the protective order.
2. Defendants' motion to file documents under seal (ECF 173), which seeks to seal other proprietary information from plaintiffs, is **GRANTED**.

Dated: January 20, 2022

Hon. Andrew G. Schopler
United States Magistrate Judge