UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAGNER AERONAUTICAL, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> David DOTZENROTH, et al., <br><br> Defendants. | Case No.: 21-cv-0994-L-AGS <br><br> **ORDER ON DEFENDANTS' EX PARTE MOTION TO COMPEL DISCOVERY (ECF 208 & 243)** |

The Dotzenroth defendants asked the Court to determine if various documents withheld by plaintiffs were in fact privileged. After an exhaustive *in camera* review, the Court concludes that most documents were properly withheld, but a few nonprivileged items must be disclosed.

## BACKGROUND

Plaintiffs William Wagner and William Tarpley collaborated with defendant David Dotzenroth to develop a program to convert passenger aircrafts into cargo freighters. (ECF 132, at 11.) Dotzenroth later parted ways with Wagner and Tarpley. (*Id.* at 16.) In December 2020, nonparty Fortress Investments created plaintiff Mammoth Freighters, LLC, a jumbo-jet conversion program. (ECF 210, at 10.) Wagner and Tarpley became employees of this Fortress subsidiary upon formation. (ECF 235, at 7.) Dotzenroth then formed his own passenger-to-freighter conversion company, prompting plaintiffs to sue him, his business partner Wiley Dotzenroth, and their enterprises Sequoia Aircraft Conversions and CAI Consulting, Ltd., for alleged trade-secret misappropriation. (ECF 132, at 1, 27.)

In response to various discovery requests, plaintiffs provided a privilege log. (*See* ECF 243-2, at 3–34.) The Dotzenroth defendants were skeptical of several entries. They requested and were granted *in camera* review of four document categories: (1) communications between Tarpley and Wagner as well as Tarpley's emails to himself,

1

(2) unsent documents drafted by Tarpley saved to his hard drive, (3) communications between nonparties and non-attorneys, and (4) communications including Fortress's in-house counsel, nonparties, and non-attorneys. (ECF 208, at 1–2; ECF 258.)

## DISCUSSION

### A. Attorney-Client Privilege

Parties are generally entitled to discovery of "relevant" and "proportional" matters, so long as they are "nonprivileged." Fed. R. Civ. P. 26(b)(1). At issue here is the attorney-client privilege. To determine if that privilege applies, courts employ an eight-part test:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). The attorney-client privilege protects both "confidential disclosures made by a client to an attorney" and the "attorney's advice in response to such disclosures." *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997) (citation omitted).

"A document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds." *Santrade, Ltd. v. Gen. Elec. Co.*, 150 F.R.D. 539, 545 (E.D.N.C. 1993). Corporate employees collecting information "about matters which the parties intend to seek legal advice are likewise cloaked by attorney-client privilege." *AT&T Corp. v. Microsoft Corp.*, No. 02-0164 MHP (JL), 2003 WL 21212614, at *3 (N.D. Cal. Apr. 18, 2003). These communications are "comparable to notes a client would make to prepare for a meeting with her lawyer" and so are protected. *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002). The privilege may also extend to noncommunications if the document "memorializes and reflects legal advice rendered in a privileged conversation." *Chrimar Sys. Inc. v. Cisco Sys. Inc.*, No. 13-cv-1300-JSW (MEJ), 2016 WL 1595785, at *3 (N.D. Cal. Apr. 21, 2016) (quotation omitted).

But "[p]ercipient facts cannot achieve the protected status under the attorney-client privilege by merely repeating them to an attorney." *United States ex rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 683 (S.D. Cal. 1996). Likewise, "a single email of a 'legal nature' does not privilege the entire email thread"; "subsequent emails in the thread should only be withheld if they reveal legal advice or a request for such . . . ." *In re Chase Bank USA, N.A. Check Loan Cont. Litig.*, No. 3:09-MD-2032 MMC JSC, 2011 WL 3268091, at *6 (N.D. Cal. July 28, 2011); *see also Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, No. 16CV00236WHODMR, 2019 WL 1950381, at *4 n.2 (N.D. Cal. May 1, 2019) (noting that while the initial email in the chain was "made for the purpose of obtaining legal advice," "the remaining emails in the thread pertain to simple scheduling matters and are not privileged communications," so "Defendants should have redacted the portion of the thread that contains a privileged communication and produced the remaining communications").

Finally, the attorney-client privilege may be waived. The "voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject." *Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981). But "the Ninth Circuit recognizes that there is no waiver of the privilege where a party discloses privileged material to another with whom it shares common interests." *United States v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003). This common-interest doctrine protects the confidentiality of communications "made by separate parties in the course of a matter of common interest" that are "designed to further that effort." *Id.* (citation omitted). So "individuals involved in corporate decision-making" or that are otherwise working together can share privileged documents without waiving the protection. *Santrade*, 150 F.R.D. at 545 (citations omitted). Similarly, "two parties who share a common legal interest may share legal advice with counsel concerning their mutual interest without effecting a waiver." *MGA Ent., Inc. v. Nat'l Prod. Ltd.*, No. CV 10-07083, 2012 WL 3150532, at *3 (C.D. Cal. Aug. 2, 2012) (citation omitted).

3

B.  **The Withheld Documents**

   1. *Tarpley–Wagner Emails and Tarpley–Tarpley Emails*

The Dotzenroth defendants raised concerns over the privilege designations for nine privilege log entries consisting of emails between non-attorneys Wagner and Tarpley or emails from Tarpley to himself. (ECF 243, at 3; PLE[1] 44, 102, 103, 108, 109, 111–14.)

The emails between Tarpley and Wagner are all terminal emails on a chain in which their outside counsel gave them advice on a legal issue. (*See* PLE 44, 108–09, 111–14.) In these emails, Tarpley and Wagner "reflect" the substance of that privileged legal advice in their discussions. As parties "shar[ing] a common legal interest," Tarpley and Wagner "may share legal advice with counsel concerning their mutual interest without effecting a waiver." *MGA Ent., Inc.*, 2012 WL 3150532, at *3 (citation omitted); *see also Chrimar*, 2016 WL 1595785, at *3 (noting a "document that is not communicated between an attorney and a client may still be privileged" if it "memorializes and reflects legal advice rendered in a privileged conversation" (citation omitted)).

Likewise, in the emails from Tarpley to himself, Tarpley is forwarding an email thread between himself and his lawyer that includes multiple emails regarding legal advice. (*See* PLE 102–03.) Tarpley is once again merely "memorializ[ing]" the "legal advice rendered in a privileged conversation." *See Chrimar*, 2016 WL 1595785, at *3. So, both the Tarpley-Wagner emails and Tarpley's self-emails are privileged.

   2. *Tarpley's Unsent Document Drafts*

Defendants also challenge the privilege claims on two unsent documents drafted by Tarpley and saved to his hard drive. (PLE 45, 110.) Both documents reflect legal advice.

---

[1] "PLE" refers to a privilege-log entry (or entries). For the *in camera* review, plaintiffs' cover letter cross-referenced each PLE with its corresponding Bates-numbered document. Because defendants seek to compel specific PLEs, the Court will refer to each item by its PLE number. The remainder of plaintiffs' cover letter is disregarded as improper *ex parte* communication. *See, e.g.*, *Apple Inc. v. Samsung Elec. Co.*, No. 11-CV-01846-LHK, 2015 WL 3863249, at *3 (N.D. Cal. June 19, 2015) (noting that a party's "*ex parte* brief regarding privilege was an improper *ex parte* communication").

4

The first document, PLE 45, is "comparable to notes a client would make to prepare for a meeting with [his] lawyer." *See ChevronTexaco Corp.*, 241 F. Supp. 2d at 1077. Tarpley spoke with his lawyer about the legal issue. (*See* PLE 16 (reflecting Tarpley's communications with his lawyer on the same issue).) He then drafted a document reflecting that advice (PLE 45), which he sent to his lawyer for further advice. (*See* PLE 111 (email to attorney attaching a copy of PLE 45).) And then his lawyer returned advice on the issue in a Word document, which Tarpley saved to his hard drive. (PLE 110.) The second document, PLE 110, directly "memorializes and reflects legal advice" rendered by his attorney. *See Chrimar*, 2016 WL 1595785, at *3. Accordingly, both are privileged.

### 3. *Communications Between Nonparties and Non-Attorneys*

The Dotzenroth defendants also challenged the privilege designations for 23 entries involving nonparties and non-attorneys. Nineteen of the entries are privileged entirely. The remaining four must be turned over with redactions.

Tarpley's employee, Gordon Graves, was tasked with helping Tarpley with the conversion project. (ECF 235-1, at 4.) Tarpley forwarded Graves an email with a Vinson & Elkins lawyer. (PLE 3.) "[V]oluntarily disclosing privileged documents to third parties will generally destroy the privilege." *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126–27 (9th Cir. 2012). But because Graves was Tarpley's employee, the privilege persisted. *See ChevronTexaco Corp.*, 241 F. Supp. 2d at 1077 ("The privilege might protect a communication between nonlegal employees in which the employees discuss or transmit legal advice given by counsel.").

Nevertheless, there must be privileged content to begin with. Although the underlying emails are with a lawyer, there does not appear to be any legal advice offered. The only emails from the lawyer to Tarpley relate to scheduling a phone call. Tarpley, however, does provide some substantive information to the lawyer for legal advice. And "confidential disclosures made by a client to an attorney in order to obtain legal advice" are privileged. *Bauer*, 132 F.3d at 507 (citation omitted). Specifically, the September 30, 2020 email and the accompanying attachments fall within the attorney-client privilege. The

subsequent discussion about technical difficulties, however, fails to relate to any legal advice. Accordingly, plaintiffs are ordered to produce PLE 3. Plaintiffs may withhold the accompanying attachments and redact the September 30, 2020 conversation, the subject line for that email, and the subject line for the later emails on the thread.[2]

The next nonparty at issue is Sam Goh. (*See* PLE 121, 124–25, 128–33, 137–39.) Tarpley, Wagner, and Goh are all Mammoth employees. (ECF 235, at 8–9; ECF 235-1, at 5.) Though none of them are attorneys, this Court concludes that all three Mammoth employees were compiling information "for the purpose of seeking legal advice," which is privileged. *AT&T Corp.*, 2003 WL 21212614, at *3.

In these emails, Tarpley acts as an intermediary between Goh and counsel, first receiving information and legal questions from Goh that Tarpley relays to counsel and then forwarding counsel's responses back to Goh. (*See* PLE 121 (Goh asking Tarpley for clarification on a legal issue), PLE 122 (Tarpley asking counsel for clarification on that same issue), PLE 124 (Tarpley including Goh on the clarification email thread), PLE 125 (duplicate of PLE 124), PLE 128 (Goh asking for further clarification on the issue), PLE 129 (Tarpley summarizing counsel's response), PLE 130 (duplicate of PLE 129), PLE 131 (Goh offering further information for the legal issue), PLE 132 (Tarpley informing Goh of his conversations with counsel), PLE 133 (duplicate of PLE 132), PLE 134 (Tarpley forwarding Goh's input to counsel), PLE 137 (Tarpley forwarding legal advice back to Goh), PLE 138 (Goh acknowledging receipt of advice and indicating application of legal advice), PLE 139 (Goh requesting further clarification on the legal advice Tarpley relayed).) Tarpley, Wagner, and Goh's discussions were "about matters which the parties intend[ed] to seek legal advice," and so they are "cloaked by attorney-

---

[2] As with some other nonprivileged items the Court identified, it is questionable whether the unredacted content here is relevant to any request for production. But since plaintiffs' only relevance argument is a conclusory sentence that "the logged documents are of minimal relevance to the issues in [defendants'] case" (ECF 235, at 10), the Court declines to consider it. *See D.A.R.E. Am. v. Rolling Stone Mag.*, 270 F.3d 793, 793 (9th Cir. 2001) ("A 'bare assertion' of an issue 'does not preserve a claim . . . .'").

client privilege." *AT&T Corp.*, 2003 WL 21212614, at *3. Similarly, when Tarpley forwarded the legal advice back to Goh, the privilege survived so that Mammoth—"the corporation"—could "be informed of legal advice and act appropriately." *See Santrade*, 150 F.R.D. at 545.

Like the emails with Goh, plaintiffs' email with Tom Blair, a "consultant[]" hired to assist Tarpley and Wagner in securing funding, (ECF 235-1, at 5), is privileged. (*See* PLE 6.) The email relates to a legal issue that Tarpley later submits to his attorney. (*See* PLE 111.) Their discussion was also "about matters which the parties intend[ed] to seek legal advice." *AT&T Corp.*, 2003 WL 21212614, at *3.

The conversations involving Tarpley, Wagner, and Fortress non-attorney personnel are less clearly privileged. (PLE 62, 67, 69–71, 168, 178, 183, 187.) Defendants' suspicion that these communications were "made in the context of plaintiffs and Fortress negotiating at arm's length about their financial arrangement," however, may be laid to rest. (ECF 210, at 9.) In all these communications, Fortress and plaintiffs were pursuing a "common legal interest . . . ." *MGA Ent., Inc.*, 2012 WL 3150532, at *4.

The earliest of these emails is directed to Fortress lawyers who were mistakenly omitted from the email. (PLE 62; *cf.* PLE 63 (immediately adding Fortress counsel to the thread).) It is a direct, legal question targeting "a common legal" effort between Fortress and plaintiffs. *See Regents of Univ. of Cal. v. Affymetrix, Inc.*, 326 F.R.D. 275, 279 (S.D. Cal. 2018). And the entire underlying email thread is aimed at "further[ing] *that* effort." *See Bergonzi*, 216 F.R.D. at 495 (citation omitted). So the communication is privileged.

But just because that earlier email is privileged does not mean the remaining responses are. *See In re Chase Bank*, 2011 WL 3268091, at *6. The terminal email on PLE 67 doesn't include any legal advice, nor does it appear to be a discussion "about matters which the parties intend to seek legal advice." *See AT&T Corp.*, 2003 WL 21212614, at *3. The same is true of PLE 71, where the terminal email is just a request to add an item to the agenda. So plaintiffs are ordered to produce PLE 67, redacting all content except for the January 8, 2021, 12:12 p.m. email, and to produce PLE 71, redacting all

7

content except for the January 8, 2021 email. For both, plaintiffs may redact the subject lines of the unredacted emails.

PLEs 69, 70, 168, and 178, on the other hand, are entirely privileged. Like PLE 67, they all include a terminal email between two nonlawyers on a thread with underlying privileged content. For these entries, the last email discusses the legal advice received, directing the actions to be taken based on the advice rendered. One of the purposes of the attorney-client privilege is to protect "the giving of professional advice to those who can act on it . . . ." *Upjohn*, 499 U.S. at 390. That is precisely the situation here: the legal advice was relayed to the individuals who would act upon it. So these entries are privileged.

The final two communications in this category involve forwarded messages from plaintiffs' counsel to Tarpley or another Wagner Aeronautical employee. (PLE 183, 187.) For PLE 183, the underlying emails from counsel to Wagner and a Fortress employee are protected because they are discussions about specific information and aspects of the case between the attorney and his client. The terminal email on the thread, however, doesn't reveal any of that substantive discussion—it's just a scheduling issue. While it doesn't waive the attorney-client privilege, as Wagner and Tarpley are jointly represented, the content itself isn't privileged. So plaintiffs must produce PLE 183 with the May 12, 2021 email from Atkeson to Tarpley unredacted. They may redact the attachments, the underlying emails, and the subject line.

But PLE 187 is entirely privileged. Plaintiffs' current counsel submitted a question to a Wagner Aeronautical employee, and that employee followed up with a coworker to determine how to respond. (PLE 187.) Such correspondence is "comparable to notes a client would make to prepare for a meeting with her lawyer." *ChevronTexaco Corp.*, 241 F. Supp. 2d at 1077. So, the entire communication is privileged.

### 4. *Communications Including Attorneys, Nonparties, and Non-Attorneys*

The Dotzenroth defendants question the privilege claims for 23 additional entries. (*See* PLE 16, 26, 60, 61, 63–66, 68, 87, 120, 122, 123, 127, 134–36, 145–47, and 158–60). Many of the attorneys included are Fortress attorneys. Because the negotiations between

8

plaintiffs and Fortress were still ongoing during this time, defendants suspect these communications were "made in the context of negotiating their business relationship—not formulating a joint legal strategy." (ECF 210, at 10.) And the presence of nonparties suggests a possibility of waiver. (*Id.*) Defendants' concerns are, however, ultimately unfounded. Plaintiffs and Fortress were communicating about a joint legal strategy, and all the nonparties are Fortress or plaintiffs' employees who share in that joint legal interest. The entries are not entirely privileged though, because not all emails involve legal advice.

To start, Bill Yuen was hired as a consultant to assist Tarpley and Wagner in obtaining funding for the conversion program. (ECF 235-1, at 5.) Because Yuen was Tarpley's agent, Tarpley could share the legal advice he received from attorney Bevans to the extent necessary for Yuen to "act on it" without compromising privilege. *See Upjohn*, 499 U.S. at 390. So the legal advice proffered by Bevans in PLE 16 remains privileged. But the terminal two emails contain no legal advice—they "pertain to simple scheduling matters and are not privileged communications." *See Planned Parenthood*, 2019 WL 1950381, at *4 n.2. So plaintiffs must produce PLE 16, but they may "redact[] the portion of the thread that contains a privileged communication"—the opening two emails and the subject line for all the emails on this thread. *Id.*

Similarly, the emails between plaintiffs and Fortress attorneys and employees are generally privileged. They broadly regard a common legal strategy between Fortress and plaintiffs, which triggers attorney-client protection. (PLE 26, 60, 61, 63–66, 68, 120, 122, 123, 127, 134–36, 145–47, and 158–60); *see Bergonzi*, 216 F.R.D. at 495 (noting that there is "no waiver of the privilege" when the communications are "made by separate parties in the course of a matter of common interest" that are "designed to further that effort"). And because the individuals involved on each thread "are those who can act on it," the privilege isn't waived. *See Upjohn*, 449 U.S. at 389.

The emails between plaintiffs and Fortress attorneys that compile information for the purpose of seeking legal advice or directly solicit or receive the legal advice are privileged in their entirety. *See Upjohn*, 449 U.S. at 390 ("[T]he [attorney-client] privilege

9

exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."); *AT&T Corp.*, 2003 WL 21212614, at *3 ("Communications containing information compiled by corporate employees for the purpose of seeking legal advice and later communicated to counsel are protected by attorney-client privilege."). This category includes PLEs 26, 60, 61, 63–66, 68, 122, 123, 127, 134–36, 145–47, and 158–60. Likewise, those emails disseminating the legal advice to "those who can act on it" are privileged. *See Upjohn*, 449 U.S. at 390. So PLE 120 is privileged too.

But PLE 87 is an unprivileged business discussion. A business-oriented conversation is not shielded from disclosure simply because lawyers were copied on it. *See United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002) ("The fact that a person is a lawyer does not make all communications with that person privileged."). "Under the 'primary purpose' test, courts look at whether the primary purpose of the communication is to give or receive legal advice, as opposed to business or tax advice." *In re Grand Jury*, 23 F. 4th 1088, 1091 (9th Cir. 2021) (citations omitted). For PLE 87, business advice appears to be the only purpose. So plaintiffs must produce PLE 87 in its entirety, including the attached proposal.

## CONCLUSION

The Dotzenroth defendants' motion to compel is **GRANTED IN PART** and **DENIED IN PART**. The foregoing documents are protected under the attorney-client privilege and common-interest doctrines to the extent stated. By September 15, 2022, plaintiffs must produce the privilege-log-related documents as set forth in the attached Appendix.

Dated: September 1, 2022

_____
Hon. Andrew G. Schopler
United States Magistrate Judge

# APPENDIX

| PLE | Result | PLE | Result | PLE | Result |
|---|---|---|---|---|---|
| 3 | Compelled in part[a] | 121 | Denied | 135 | Denied |
| 6 | Denied | 122 | Denied | 136 | Denied |
| 16 | Compelled in part[b] | 123 | Denied | 137 | Denied |
| 26 | Denied | 124 | Denied | 138 | Denied |
| 44 | Denied | 125 | Denied | 139 | Denied |
| 45 | Denied | 127 | Denied | 145 | Denied |
| 60 | Denied | 128 | Denied | 146 | Denied |
| 61 | Denied | 108 | Denied | 147 | Denied |
| 62 | Denied | 109 | Denied | 158 | Denied |
| 63 | Denied | 110 | Denied | 159 | Denied |
| 64 | Denied | 111 | Denied | 160 | Denied |
| 65 | Denied | 112 | Denied | 168 | Denied |
| 66 | Denied | 113 | Denied | 178 | Denied |
| 67 | Compelled in part[c] | 114 | Denied | 183 | Compelled in part[d] |
| 68 | Denied | 120 | Denied | 187 | Denied |
| 69 | Denied | 129 | Denied | | |
| 70 | Denied | 130 | Denied | | |
| 71 | Compelled in part[e] | 131 | Denied | | |
| 87 | Compelled entirely | 132 | Denied | | |
| 102 | Denied | 133 | Denied | | |
| 103 | Denied | 134 | Denied | | |

---

[a] Plaintiffs may withhold attachments and redact (1) September 30, 2020 conversation, (2) September 30, 2020 subject line, and (3) post-September 30, 2020 subject lines.

[b] Plaintiffs may redact earliest two emails and subject line for all emails.

[c] Plaintiffs may redact all content, including all subject lines, except for January 8, 2021 12:12 PM email.

[d] Plaintiffs may redact all content, including subject lines, except for the May 12, 2021 11:08 AM email. Plaintiffs may redact and withhold attachments.

[e] Plaintiffs may redact all content, including all subject lines, except for January 8, 2021 3:59 PM email.