UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAGNER AERONAUTICAL, INC.; et al,<br><br>                              Plaintiffs,<br>vs.<br><br>DAVID DOTZENROTH; et al,<br><br>                              Defendants. | Case No.:  21-cv-0994- L-AGS<br><br>**ORDER GRANTING MOTION TO DISMISS [ECF NO. 142.]** |

Pending before the Court is Defendants' Motion to Dismiss the Fourth and Fifth Counts of Plaintiff's First Amended Complaint.[1] [ECF No. 142.] Plaintiffs have filed an Opposition, and Defendants have filed a Reply.  The Court has considered the motion and grants the request for the following reasons.

I.   FACTUAL BACKGROUND

The facts as asserted in Plaintiff's Complaint include the following:

---

[1] Defendants mistakenly identify Count Four as the Unfair Competition Law ("UCL") claim, and Count Five as the breach of fiduciary duty claim,  however Count Five alleges violation of the UCL, and Count Six alleges breach of fiduciary duty.

1

Plaintiff Mammoth Freighters LLC ("Mammoth" or "Mammoth Freighters") is developing a passenger aircraft conversion program, designed in part by Plaintiff Wagner Aeronautical, Inc. ("Wagner Aeronautical"), that takes passenger aircraft and modifies them to carry cargo for the world's leading air freight companies. The co-CEOs of Mammoth are Plaintiffs William Wagner ("Wagner") and William Tarpley ("Tarpley"). Wagner, is the founder and president of Wagner Aeronautical and Tarpley is the business lead for Mammoth's conversion program.

When Wagner and Tarpley began work on the conversion program, they asked Defendant David Dotzenroth ("Dotzenroth"), a long-time friend with connections in the financial industry, if he would be interested in exploring the possibility of a collaboration whereby Wagner and Wagner Aeronautical would contribute the engineering expertise; Tarpley would contribute project management expertise and marketing expertise to attract potential clients; and Dotzenroth would secure investment capital to fund the development of the conversion program.

Plaintiffs now allege that Defendants David Dotzenroth; Charles Wiley Dotzenroth; and Andrew Mansell; stole valuable, confidential and proprietary information belonging to Plaintiffs including a business plan, budget, and schedule roadmap, in order to launch a competing business converting large passenger aircraft into cargo freighters.

II.   PROCEDURAL BACKGROUND

On May 25, 2021, Plaintiffs filed a complaint in this Court alleging misappropriation of trade secrets under federal and state law, false advertising under the Lanham Act, unfair competition under California law, breach of fiduciary duty, and civil conspiracy. (Complaint [ECF No. 1.])  On June 21, 2021, Plaintiffs filed a motion for preliminary injunction. (Mot. [ECF No. 16.]) On July 8, 2021, Plaintiffs withdrew the motion for preliminary injunction. [ECF No. 48.] On November 9, 2021, Plaintiffs filed a First Amended Complaint, adding a claim for misappropriation against Defendant NIAR.

[ECF No. 132.] On November 23, 2021, Defendants filed the present Motion to Dismiss Counts Four and Five. [ECF No. 142.] On December 13, 2021, Plaintiffs filed an Opposition. [ECF No. 159.] On December 17, 2021, Defendants filed a Reply. [ECF No. 160.]

### III. LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*., 720 F.2d 578, 581 (9th Cir. 1983). The court must assume the truth of all factual allegations and "construe them in the light most favorable to [the nonmoving party]." *Gompper v. VISX, Inc*., 298 F.3d 893, 895 (9th Cir. 2002); *see also Walleri v. Fed. Home Loan Bank of Seattle*, 83 F.3d 1575, 1580 (9th Cir. 1996).

As the Supreme Court explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir. 1984).

### IV. DISCUSSION

#### A. UNFAIR COMPETITION- COUNT FIVE

Defendants contend the claims for unfair competition and breach of fiduciary duty must be dismissed pursuant to Rule 12(b)(6) because they are preempted by California's

Uniform Trade Secret Act ("CUTSA"), Cal. Civ. Code § 3426. (Motion at 1 [ECF No. 142-1.])

CUTSA is codified in sections 3426 through 3426.11 of the California Civil Code. Cal.Civ.Code § 3426 et seq. The breadth of CUTSA covers a range of matters, including definitions for "misappropriation" and "trade secrets," injunctive relief, attorneys' fees, limitations periods, severability, and methods for preserving the secrecy of trade secrets. *K.C. Multimedia, Inc. v. Bank of America Technoloy & Operations, Inc*., 171 Cal.App.4th 939, 954 (Ct. App. 2009). The expansiveness of CUTSA suggests "a legislative intent to preempt the common law . . . [a]t least as to common law trade secret misappropriation claims." *Id*. "CUTSA provides the exclusive civil remedy for conduct falling within its terms, so as to supersede other civil remedies 'based upon misappropriation of a trade secret'." *Silvaco Data Systems v. Intel Corp.,* 184 Cal.App.4th 210, 236 (Ct. App. 6th 2010) *distinguished on other grounds in Kwikset v. Superior Court*, 51 Cal.4th 310, 337 (Cal. 2011). "[T]he avowed purpose of CUTSA is "to make uniform the law with respect to the subject of this title among states enacting it." *Silvaco,* 184 Cal.App.4th at 241. CUTSA "therefore supersedes claims—including Section 17200 claims—based on the same nucleus of facts as trade secret misappropriation." *Waymo LLC v. Uber Technologies*, Inc., 256 F.Supp.3d 1059, 1062 (N.D. Cal. 2017); *Digital Envoy, Inc., v. Google, Inc.,* 370 F.Supp.2d 1025, 1035 (N.D. Cal. 2005)(Section 3426.7(b) preempts "claims for unfair competition and unjust enrichment since those claims are based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.") If a claim for common law or statutory unfair competition is based on the same facts as the misappropriation claim, it may be preempted under CUTSA. *K.C. Multimedia, Inc., v. Bank of America Technology*, 171 Cal.App.4th 939, 961 (Ct. App. 6th 2009).

However, CUTSA "does not affect (1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret or (3) criminal remedies, whether or not based upon

misappropriation of a trade secret.t." Cal.Civ.Code § 3426.7(b)(2). "If the plaintiff identifies no property right outside of trade secrets law, then he has no remedy outside that law, and there is nothing unsound or unjust about holding other theories superseded." *Silvaco,* 184 Cal.App.4th at 239. As a result, "preemption is not triggered where the facts in an independent claim are similar to, but distinct from, those underlying the misappropriation claim." *Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 08cv1992-MMA(POR), 2009 WL 3326631, at *11 (S.D. Cal. Sept. 3, 2009).

Defendants argue that Plaintiffs unfair competition ("UCL"), Cal Bus. & Prof. Code § 17200, claim is premised on the wrongful taking and use of confidential business information, which is the same basis for their CUTSA claim, therefore CUTSA preempts the cause of action and it must be dismissed. (Mot. at 1.) In addition, Defendants contend that Plaintiffs cannot protect information that does not qualify as a trade secret, such as the business plan, and there is no allegation that the information was protected by some other provision of law, therefore the exclusive remedy for allegations that Defendants used Plaintiffs' information for unlawful purposes is through CUTSA. (Reply at 7-8.)

In response, Plaintiffs argue that the unfair competition claim is not preempted by CUTSA because it is "based upon a broader spectrum of misconduct than misappropriation," including Defendants' use of Plaintiffs' marketing strategy, investor strategy, and methods to identify potential customers. (Oppo at 5.) As a result of the alleged theft, Plaintiffs assert that Defendants gained an unfair advantage because they "knew Plaintiff's playbook and how Plaintiffs planned to conduct their business." (*Id.*)

The Court finds that the UCL claim is based on the same nucleus of facts as the misappropriation claim. The UCL claim alleges that the Dotzenroth Defendants "unfairly and unlawfully competed directly against Plaintiffs by improperly and unlawfully using Plaintiffs' own *business plan, engineering strategy, and marketing strategy* to start a competing conversion program and by approaching the same partners and customers as Plaintiffs." (FAC at ¶ 143(emphasis added)). Plaintiffs further allege:

> ¶144. After misappropriating Plaintiffs' confidential and proprietary information, and after learning the details of Plaintiffs' engineering and marketing strategy, Defendants started a conversion program to compete directly with Plaintiffs' conversion program. With the competing program established, Defendants then sought deals with the same customers and partners as Plaintiffs. Defendants had an unfair advantage against Plaintiffs when they entered the conversion market because Defendants knew Plaintiffs' playbook and how Plaintiffs planned to conduct their business. This unfair advantage has allowed and will continue to allow Defendants to profit from their wrongdoing.
>
> 145. Defendants have been enriched by, and have significantly benefited from, their use of Plaintiffs' proprietary and confidential business information, including the business plan and the budget and schedule roadmap. Defendants obtained that benefit at the expense of Plaintiffs. They have not compensated Plaintiffs for that information.

(*Id*. at ¶ 144-145).

Plaintiffs argue that this claim does not rest on the same conduct underlying the misappropriation claim because it concerns what Defendants have done and are able to do as a result of the "unlawful disclosure" of their trade secrets, citing *BladeRoom Group Limited v. Facebook,* (*BladeRoom* I), 2018 WL 452111 at *6 (N.D. Cal. 2018). The Court does not agree.

In the misappropriation claim, Plaintiffs alleges that "Plaintiffs' *business plan, budget and schedule roadmap, and supporting* data are trade secrets under the California Uniform Trade Secrets Act. Cal. Civ. Code §3426." (FAC at ¶ 130) (emphasis added). The claim identifies the alleged misconduct, contending that "Dotzenroth Defendants intentionally, willfully, and maliciously misappropriated Plaintiffs' trade secrets to provide their conversion program with a competitive advantage." (FAC at ¶133). This was effectuated by Defendants accessing "Plaintiffs' *business plan, roadmap, and engineering strategy*." (FAC at ¶ 133)(emphasis added). The harm Plaintiffs claimed they suffered includes "disclosure of Plaintiffs' trade secrets, loss of Plaintiffs' competitive

edge, *loss of potential customers, loss of potential partnerships, and loss of revenues and profits.*" (*Id.* at ¶ 146)(emphasis added).

The alleged misappropriation of the business plan, budget analysis, project roadmap, and potential customer base constitute the same nucleus of fact for both Claim Four, misappropriation, and Claim Five, unfair competition in violation of the UCL. The acts of unfair competition are prefaced with the statement that the Defendants' misappropriation led to the unlawful conduct: "After misappropriating Plaintiffs' confidential and proprietary information, and after learning the details of Plaintiffs' engineering and marketing strategy Defendants started a conversion program to compete directly with Plaintiffs' conversion program." (FAC at ¶ 144.) As a result of the misappropriation, Plaintiffs contend that Defendants "unfairly and unlawfully competed directly against Plaintiffs by improperly and unlawfully using Plaintiffs' own business plan, engineering strategy, and marketing strategy to start a competing conversion program and by approaching the same partners and customers as Plaintiffs." (FAC at ¶ 143.)

Without the alleged misappropriation of the business plan, marketing scheme, and potential customers there is no basis for unfair competition. As in *Silvaco*, Plaintiffs have not identified any conduct that "did not depend for its supposed wrongfulness on the use of trade secrets." *Silvaco*, 184 Cal.App.4th at 236. The UCL claim can only be proven with reference to the same facts as in the CUTSA claim. There is no independent basis for the claims of unfair competition that does not rest on the alleged misappropriation, therefore these claims are superseded by CUTSA. *Id.* ("Without the claimed theft of a trade secret, the complaint would set forth no foundation for any of these claims.")

Plaintiffs reliance on *Leatt Corp. v. Innovative Safety Tech., LLC*, No. 09-cv-1301, 2010 WL 2803947, at 6 (S.D. Cal. July 15, 2010). (Oppo. at 5) and *BladeRoom I* to support their argument that the unfair competition claim is based on a broader spectrum of misconduct than misappropriation, is unavailing. As a preliminary matter, neither *Leatt*

nor *BladeRoom I* are binding on this Court. To the extent the holdings are instructive, the Court finds that the holdings are inapposite.

In *Leatt*, the Plaintiff alleged to have spent many years of independent research and development creating neck safety braces for use in motorsports. *Leatt Corp., v Innovative Safety Technology*, 09-cv-1301, 2010 WL 2803947, *1 (S.D. Cal. 2010). Two employees of *Leatt* improperly disclosed and commercialized Plaintiffs' proprietary and confidential information to develop and produce a neck brace based on the misappropriated information. *Id*. Plaintiff filed a suit in South Africa, where the former employees were located, and obtained an injunction. *Id*. at *2. Following that action, the Plaintiff file suit in the Southern District of California, alleging causes of action for misappropriation of trade secrets, unfair competition, tortious interference and enforcement of foreign arbitration award. *Id*. On a motion to dismiss, the district court found that the unfair competition claim could survive dismissal because it was "based on more than just the misappropriation of Plaintiffs' trade secrets." *Id*. at *6. Specifically, the Court noted that the claim "states that conduct underlying it includes, but is not limited to, misappropriation of trade secrets" and that injury is based "not only on theft of trade secrets but also on other 'confidential' and/or 'proprietary' information." *Id*. As a result, the Court held "to the extent these claims are based upon non-trade secret information, the Court agrees that they should be allowed to go forward at this stage." *Id*.

The *Leatt* decision has been described as the "something more" approach to CUTSA preemption, meaning that a Plaintiff's claim could survive if it asserts some basis other than trade secret theft. *See Zayo Group LLC v Hisa,* No. SACV 13-752-JST (JPRx), 2013 WL 12201401 (C.D. Cal. Sept. 17, 2013). However, this approach has been rejected as incorrect under CUTSA and contrary to *Silvaco* in *Artec Group. Inc., v. Klimov*, No. 15-CV-03449-EMC, 2016 WL 8223346, at *6-7 (N.D. Cal. Dec. 22, 2016). There the court found that alleging unfair competition based on information that was "confidential or proprietary, but not trade secret" was not enough to avoid CUTSA

preemption. *Id*. at *6. Moreover, "CUTSA supersedes claims based on the misappropriation of information, regardless of whether such information ultimately satisfies the definition of a trade secret." *SunPower Corp v SolarCity Corp*., No 12-CV-00694-LHK, 2012 WL 6160472, at *6 (N.D. Cal. Dec. 11, 2012).

Similarly, *BladeRoom I* does not support Plaintiffs argument. In *BladeRoom I*, the plaintiff asserted two UCL claims. First, plaintiff claimed that defendant Emerson "violated the unlawful prong of the UCL by wrongfully disclosing and using its confidential information." *BladeRoom I*, 2018 WL 452111 *4. Second, plaintiff alleged that due to the misappropriation, Emerson could unfairly compete with BladeRoom in the market, and that "Emerson falsely claim[ed] to have collaborated in creating its own competing design and method." *Id.*, at *6. The court found that the first claim was superseded by CUTSA because it could only be proven by reference to the same "nucleus of facts" as plaintiff's CUTSA claim. *Id*. But the district court held that the second UCL claim was not preempted because the basis of the claim was "rooted in what Emerson has done and can do as a result of the unlawful disclosure and use of BladeRoom's confidential information, and not on the same conduct underlying the misappropriation claim." *Id*. The court denied the claim based on the allegations that Emerson falsely claimed to have collaborated in creating its own design and method. *Id*.

Much as in *Leatt*, the court in *BladeRoom I* drew a distinction between the acts underlying the misappropriation, and the allegation of "something more" that occurred as a result of the alleged theft of trade secrets. As noted above, this approach has been rejected, with courts noting that "claims based on [plaintiffs] non-trade secret proprietary information are superseded*." Artec Group,* 2016 WL 8223346 at *7. "The majority of district courts that have considered *Silvaco* have held that CUTSA supersedes claims based on the misappropriation of information that does not satisfy the definition of trade secret under CUTSA." *SunPowe*r, 2012 WL 6160472, at *6 (collecting cases). Plaintiffs contradict themselves by stating that "Plaintiffs' unfair competition claim arises not from

Defendants' disclosure and use of Plaintiff's trade secret information, but from Defendants' ability to 'unfairly compete with [Plaintiffs] in the market for" P2F conversions '*because of the misappropriation*.'" (Oppo. at 6)(emphasis added).

In addition, Plaintiffs argue that dismissal of this claim at this stage in the proceedings is inappropriate because further factual support is required, however a motion to dismiss may be granted if it lacks a "cognizable legal theory or for insufficient facts under a cognizable theory." *Robertson*, 749 F.2d at 534. For the reasons stated above, Plaintiffs' UCL claim lacks sufficient facts to support a cognizable legal theory because it is based on the same nucleus of facts as the trade secret misappropriation claim, and is dismissed without prejudice.

### B. FIDUCIARY DUTY- COUNT SIX

Defendants argue that the claim for breach of fiduciary duty must be dismissed "because the parties never agreed on the essential terms of a joint venture." (Mot. at 10) Defendants further contend that Plaintiffs are attempting to exploit the alleged joint ventures' property for their own personal benefit, which makes it is clear that" there was no joint venture formed and no fiduciary duties owed." (*Id*.)

In response, Plaintiffs contend that the fiduciary duty claim is not preempted, and that it is adequately pled. (Oppo. at 8-9.)  Plaintiffs claim they were joint venturers with Defendants Wagner and Tarpley working toward a combined enterprise, "with each person assigned a specific role." (*Id*. at 10).  Though the partnership was not memorialized in writing, Plaintiffs argue that it is immaterial that no agreement was signed, but instead it is the intent of the parties that matters. Plaintiffs claim that the parties' intended to collaborate "to commercialize a passenger-to-freighter conversion program and share profits and losses in to-be determined percentages." (*Id*.) As a result, they claim that Defendants breached their duty to protect trade secrets as part of the joint venture agreement.

"To state a claim for breach of fiduciary duty, plaintiff must allege: 1) the existence of a fiduciary relationship; 2) its breach; and 3) damage proximately caused by that breach." *AccuImage Diagnostics Corp v. Terarecon, Inc*, 260 F.Supp.2d 941, 955 (N.D. Cal. 2003). "A fiduciary or confidential relationship can arise when confidence is reposed by persons in the integrity of others, and if the latter voluntarily accepts or assumes to accept the confidence, he or she may not act so as to take advantage of the other's interest without that person's knowledge or consent." *Pierce v. Lyman*, 1 Cal.App.4th 1093, 1101-02 (1991).

"Under California law, a joint venture exists if there is an agreement between the parties under which they have a 'joint interest, in a common business undertaking, an understanding as to the sharing of profits and losses, and a right of joint control.'" *Goodworth Holdings Inc. v. Suh*, 239 F.Supp. 2d 947, 956 (N.D. Cal. 2002); *see also Ramirez v. Long Beach Unified School Dist.*, 105 Cal.App.4th 182, 193 (2002). When essential elements are reserved for future agreement, a legally binding agreement is not formed. *Goodworth Holdings*, 239 F.Supp.2d at 956.

In Count Six, Plaintiffs allege breach of fiduciary duty against David Dotzenroth and CAI Consulting. Plaintiff claims:

> 148. Dotzenroth and CAI Consulting had a fiduciary duty to Wagner Aeronautical, Wagner, and Tarpley because Dotzenroth was a joint venturer with Wagner and Tarpley while working with them to develop Plaintiffs' conversion program. Dotzenroth and CAI Consulting owed Wagner, Tarpley, and Wagner Aeronautical the duty of utmost good faith.
>
> 149. Dotzenroth and CAI Consulting breached that duty when Dotzenroth exploited his relationship with Tarpley and Wagner to misappropriate information, work product, and intellectual property developed and owned by Wagner, Tarpley, and Wagner Aeronautical. Dotzenroth then impermissibly used the misappropriated property for his own benefit – without compensating Tarpley or Wagner – to form Sequoia Aircraft Conversions and compete directly with Plaintiffs for conversion customers and other business opportunities.

(FAC at ¶¶ 148-150.)

However, the facts as alleged in the FAC demonstrate that although Plaintiffs, Dotzenroth and Wagner shared a business interest in developing a commercial aircraft conversion program, there was no understanding as to the sharing of profits and losses, and a right of joint control, as required to show a fiduciary relationship. *See Ramirez*, 105 Cal.App.4th at 193.

In the operative complaint, Plaintiffs assert that the joint business interest was formed when Wagner and Tarpley approached Dotzenroth to ask "if he would be interested in exploring the possibility of a collaboration whereby Wagner and Wagner Aeronautical would contribute the engineering expertise; Tarpley would contribute project management expertise and marketing expertise to attract potential clients; and Dotzenroth would secure investment capital to fund the development of the conversion program." (FAC. at ¶ 4.)

The parties moved forward, and "[i]n May 2019, Wagner, Tarpley, and Dotzenroth considered ways to formalize their relationship." (*Id*. at ¶52.) The venture stalled, as noted in the complaint, when "Tarpley . . . struggled to find a role for Dotzenroth that would justify the one-third ownership interest in the LLC that Dotzenroth had requested. Because Dotzenroth lacked P2F conversion experience and expertise, there were few roles he could fill." (*Id*. at ¶ 53.) The relationship further soured when Dotzenroth and his wife "demanded a full one-third of the ownership, even though Dotzenroth was unwilling to accept significant responsibility and had made only minor contributions – if any, at all – to the development of the business plan and budget and schedule roadmap." (*Id*. at ¶55.) "When it became clear Dotzenroth would not receive a one-third share, he stopped collaborating with Tarpley and Wagner around the summer of 2019." (*Id*. at ¶ 56.)

At that point, "[i]nstead of formalizing their collaboration, the trio broke apart when Wagner and Tarpley refused – because of Dotzenroth's meager

contributions – to grant Dotzenroth the sizeable ownership stake in the conversion program that he had demanded." (*Id.* at ¶ 8.)

These allegations fail to support the conclusion that a joint venture was created because there is no reference to an agreement on profit and loss sharing, and joint control. *See Ramirez*, 105 Cal.App.4th at 193. Therefore, Defendants' motion to dismiss Plaintiffs' claim for breach of fiduciary duty is granted for failure to allege sufficient facts under a cognizable theory. *Robertson*, 749 F.2d at 534.

## V. CONCLUSION AND ORDER

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss the following counts in Plaintiffs' First Amended Complaint: Count Five, unfair competition, and Count Six, breach of fiduciary duty, without prejudice.

**IT IS SO ORDERED.**

Dated:  September 16, 2022

_____
Hon. M. James Lorenz
United States District Judge